## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW SCALF,<br><br>                  Plaintiff,<br><br>      -against-<br><br>ERMENEGILDO ZEGNA; ERMENEGILDO ZEGNA CORPORATION; ZEGNA, INC.; and individually and jointly, JOHN FRAMPTON; CARLOS FLORES and BELEN GARAFOLA.<br><br>                Defendants. | Civil Action No.:<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by and though Plaintiff's attorney, the Law Office of Laurie E. Morrison, hereby alleges as follows:

### NATURE OF THE ACTION

1.    This is an employment case about Ermenegildo Zegna, Ermenegildo Zegna Corporation, and Zegna, Inc., and their supervisors, including, but not limited to, John Frampton, Carlos Flores and Belen Garafola, harassing, discriminating against and retaliating against Plaintiff because of Plaintiff's sex, gender, heterosexual orientation, age and legally protected complaints. Defendants' unlawful abuse included, but was not limited to, falsely claiming that Plaintiff was engaged in a homosexual relationship with a co-worker; calling Plaintiff derogatory names on a regular basis; giving Plaintiff disciplinary write-ups for conduct that other employees did with impunity; escalating their harassment after Plaintiff's legally protected complaints and terminating Plaintiff's employment.

2.    Plaintiff's claims include, but are not limited to, harassment, hostile work environment, discrimination, retaliation and unlawful termination of employment based on

gender, sex, sexual orientation, age and legally protected complaints in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq*., as amended ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq*. (NYCHRL").

3.     This action is against Plaintiff's former employers Ermenegildo Zegna, Ermenegildo Zegna Corporation, and Zegna, Inc. (hereinafter, "Defendant Companies") and against former supervisors John Frampton (hereinafter, "Defendant Frampton"), Carlos Flores (hereinafter, "Defendant Flores") and Belen Garafola (hereinafter, "Defendant Garafola") (collectively, "Defendants").

## **PARTIES**

4.     At all times relevant to this action, Plaintiff, Matthew Scalf, was and is a natural person who resided in New York County, New York.

5.     At all times relevant to this action, Defendant Frampton was and is a natural person who, upon information and belief, resided in New York County, New York.

6.     At all times relevant to this action, Defendant Flores was and is a natural person who, upon information and belief, resided in New York County, New York.

7.     At all times relevant to this action, Defendant Garafola was and is a natural person who, upon information and belief, resided in New York County, New York.

8.     Upon information and belief, Defendant Ermenegildo Zegna is a domestic business corporation.

9.     At all times relevant to this action, Defendant Ermenegildo Zegna Corporation was and is a domestic business corporation.

10.     At all times relevant to this action, Defendant Zegna, Inc. was and is a domestic business corporation.

11.     At all times relevant to this action, Defendant Companies maintained an office located at 663 5th Avenue, NYC, NY 10022 (hereinafter, Defendants' Boutique #400).

12.     At all times relevant to this action, Plaintiff worked in Defendants' Boutique #400.

13.     At all times relevant to this action, Defendant Companies employed over 100 workers.

14.     Plaintiff seeks to hold Defendants liable under various legal doctrines, including without limitation, vicarious liability, strict liability, respondeat superior, aiding and abetting liability and/or other grounds.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the federal claims asserted herein in that they arise out of the laws of the United States.  *See* 28 U.S.C. § 1331 and 29 U.S.C. § 2617.

16.     This Court has supplemental jurisdiction over the New York State and common law claims pursuant to 28 U.S.C. § 1367.

17.     Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

18.     On or around May 12, 2016, Plaintiff filed individual charges of discrimination, harassment and retaliation against Defendant Companies based on sex, sexual harassment, gender and legally protected complaints (hereinafter, the "Charges") with the Equal Employment

Opportunity Commission ("EEOC"). Plaintiff's Charges were dually filed in the New York State Human Rights Division.

19. Upon request, Plaintiff received a Notice of Right to Sue, dated July 26, 2016.

20. Plaintiff files the herein Complaint within 90 days of Plaintiff's receipt of the said Notice of Right to Sue.

21. Plaintiff mailed a copy of this Complaint to the New York City Commission on Human Rights and the New York City Corporation Counsel, in accordance with N.Y.C. Admin. Code § 8-502(c).

22. Plaintiff has satisfied all of the statutory prerequisites to filing this action with this Court.

23. Plaintiff seeks an award of appropriate relief.

**RELEVANT FACTS**

24. Plaintiff, Matthew Scalf, is a heterosexual man.

25. Defendant Companies hired Mr. Scalf on or around May 12, 2014.

26. Defendant Companies hired Mr. Scalf to work as operations manager in Defendants' Boutique #400.

27. Mr. Scalf's work duties included customer service, supervising stock, loss prevention, supervising the tailor shop and the like.

28. Defendant Frampton was a General Manager of Defendant Companies' Boutique #400.

29. Defendant Frampton was also one of Mr. Scalf's supervisors.

30. Defendant Frampton identifies as a homosexual man.

31.     On or around March, 2015, Defendant Frampton asked Mr. Scalf if he was "friends" with another male co-worker, Johnathan Cespedes.

32.     Upon information and belief, Defendant Frampton was insinuating that Mr. Scalf and Mr. Cespedes were involved in a homosexual relationship.

33.     Upon information and belief, Mr. Cespedes is a heterosexual man.

34.     At that time (i.e., on or around March, 2015), Mr. Cespedes had been married to a woman and had 2 children from that marriage.

35.     On numerous occasions from approximately September, 2014 to November, 2015, Defendant Frampton told Mr. Scalf that Mr. Scalf **"acts Bitchy."**

36.     A "Bitch" is a derogatory term for a woman and/or for a man who is deemed to not be behaving in a "manly" fashion.

37.     On numerous occasions from approximately September, 2014 to November, 2015, Defendant Frampton told Mr. Scalf that Mr. Scalf **acts "like a Bitch."**

38.     On numerous occasions from approximately September, 2014 to November, 2015, Defendant Frampton told Mr. Scalf that Mr. Scalf **acts "like a Queen."**

39.     A "Queen" is a term for a man who allegedly behaves in a highly effeminate manner.

40.     On at least 5 occasions from approximately March, 2015 to July, 2015, Defendant Frampton told Mr. Scalf that he should not eat lunch with any employee, including Mr. Cespedes.

41.     On at least 5 occasions from approximately March, 2015 to July, 2015, Defendant Frampton told Mr. Scalf that he should not show any behavior that would lead people to believe that Mr. Scalf was friends with any employee, including Mr. Cespedes.

42.     Upon information and belief, Defendant Frampton did not forbid Defendants' female employees from being friends with or from eating lunch with each other.

43.     Upon information and belief, Defendant Frampton did not forbid Defendants' homosexual employees from being friends with or from eating lunch with each other.

44.     At that time (i.e., on or around March, 2015 to July, 2015), Defendant Companies did not have a policy against fraternization.

45.     Mr. Scalf told Defendant Frampton that Defendant Companies did not have a policy against fraternization.

46.     Mr. Scalf also told Defendant Frampton that from approximately May, 2014 to March, 2015, Mr. Scalf witnessed employee Dino Sipsas having lunch with Mr. Cespedes on a daily or near daily basis with impunity.

47.     Dino Sipsas was one of Defendant Companies' managers.

48.     Mr. Scalf starting eating lunch with Mr. Cespedes because Mr. Sipsas initially invited Mr. Scalf to join him and Mr. Cespedes for lunch.

49.     Defendant Frampton told Mr. Scalf that he could not eat lunch with Mr. Cespedes.

50.     Upon information and belief, Defendant Frampton also told Mr. Cespedes that he could not eat lunch with Mr. Scalf.

51.     On or around May, 2015, Defendant Frampton told Mr. Scalf that it was inappropriate for Mr. Scalf and Mr. Cespedes to have matching gym bags.

52.     Defendant Frampton was again insinuating that Mr. Scalf and Mr. Cespedes had a romantic relationship.

53.     In reality, Mr. Scalf and Mr. Cespedes did not have the same gym bags.

54.     Although the bags were the same brand (i.e., the Fred Perry brand), Mr. Scalf's gym bag was black and gold and Mr. Cespedes' bag was white.

55.     Defendant Flores was Assistant Manager of Boutique #400.

56.     Upon information and belief, Defendant Flores is a homosexual man.

57.     Defendant Flores identifies as a homosexual man.

58.     On or around June, 2015, Defendant Flores asked Mr. Scalf when he was leaving for vacation to Miami with Mr. Cespedes.

59.     Defendant Flores claimed that Mr. Scalf and Mr. Cespedes were involved in a homosexual relationship.

60.     Mr. Scalf responded that he was not going on vacation with Mr. Cespedes.

61.     Mr. Scalf complained that Defendant Flores' comment was highly inappropriate and discriminatory.

62.     On that same day (i.e., on or around June, 2015), Mr. Scalf also complained to Defendant Frampton about Defendant Flores' discriminatory, harassing misconduct.

63.     Defendant Frampton responded that Mr. Scalf should not be exhibiting behavior that would lead Defendant Flores to believe that he was having a homosexual relationship with Mr. Cespedes.

64.     Defendant Frampton also responded that Mr. Scalf should not be exhibiting behavior that would lead Defendant Flores to believe that he was going on vacation with Mr. Cespedes.

65.     Defendant Frampton once again mocked Mr. Scalf for allegedly not behaving as Defendant Frampton believed a heterosexual man should behave.

66.     Defendant Frampton once again mocked Mr. Scalf for allegedly not behaving as Defendant Flores believed a heterosexual man should behave.

67.     On or around June, 2015, approximately one week after Mr. Scalf complained about Defendant Flores' discriminatory comments and conduct, Mr. Scalf took approximately one week of approved Paid Time Off ("PTO") from work.

68.     Mr. Scalf returned to work on or around mid-June/late June, 2015.

69.     When Mr. Scalf returned to work, he learned that Defendant Flores had told employees that Mr. Scalf and Mr. Cespedes were on vacation together, again claiming hat they were involved in a homosexual relationship.

70.     In response, co-workers gossiped and made jokes about Mr. Scalf's perceived homosexuality.

71.     The conduct further exacerbated the unlawful abuse and hostile work environment that Mr. Scalf suffered.

72.     Mr. Scalf again complained to Defendant Frampton about Defendant Flores' unlawful conduct.

73.     Mr. Scalf asked Defendant Frampton to report the incidents to human resources ("HR").

74.     Defendant Frampton told Mr. Scalf that he would not report the incidents to HR.

75.     Defendant Frampton said that he would rather take care of the issues himself.

76.     Mr. Scalf told Defendant Frampton that if he did not report the incidents to HR, then Mr. Scalf would do so himself.

77.     This would alert HR to Defendant Frampton's unwillingness to properly escalate Mr. Scalf's legally protected complaints.

78.     Defendant Frampton told Mr. Scalf that he wanted to have a meeting with Mr. Scalf and with Defendant Flores.

79.     During the meeting, Mr. Scalf again reported the unlawful comments and conduct.

80.     On or around 2-3 days after Mr. Scalf met with Defendant Frampton and with Defendant Flores, Defendant Frampton told Mr. Scalf that he had reported the incidents to HR.

81.     On or around July, 2015, approximately one week after Mr. Scalf requested that Defendant Frampton report his complaints to HR, Defendant Frampton **asked Mr. Scalf if he was in a "relationship" with Mr. Cespedes**.

82.     Mr. Scalf said that he was not.

83.     Defendant Frampton again said that Mr. Scalf **acts "Bitchy."**

84.     Defendant Frampton again said that Mr. Scalf **acts "like a Bitch."**

85.     Defendant Frampton again said that Mr. Scalf **acts "like a Queen."**

86.     Throughout Mr. Scalf's employment with Defendants, Defendant Frampton continued to mock Mr. Scalf's sex, gender, sexual orientation and "manhood."

87.     For example, throughout Mr. Scalf's employment with Defendants, Defendant Frampton continued to state that Mr. Scalf **acts "Bitchy."**

88.     Throughout Mr. Scalf's employment with Defendants, Defendant Frampton continued to state that Mr. Scalf **acts "like a Bitch."**

89.     Throughout Mr. Scalf's employment with Defendants, Defendant Frampton continued to state that Mr. Scalf **acts "like a Queen."**

90.     Mr. Scalf again complained about the unlawful comments and conduct.

91.	On or around the beginning of August, 2015, after Mr. Scalf's legally protected complaints, Defendant Frampton told Mr. Scalf to change his work schedule.

92.	Before Mr. Scalf's legally protected complaints, Mr. Scalf typically had Thursdays and Saturdays off from work.

93.	Mr. Cespedes also did not work on Thursdays.

94.	Defendant Frampton told Mr. Scalf to change his work schedule so that Mr. Scalf and Mr. Cespedes would not have the same days off from work.

95.	Defendant Frampton told Mr. Scalf to change his work schedule so that Mr. Scalf and Mr. Cespedes would not both have Thursdays off from work.

96.	Defendant Frampton also told Mr. Scalf to work on Saturdays, but to not work on Sundays.

97.	This was because Saturdays were high volume days, meaning they were days when Defendants had a lot of customers in their stores.

98.	Mr. Cespedes also had Sundays off from work.

99.	Defendant Frampton said it was okay for Mr. Scalf and Mr. Cespedes to both have Sundays off from work because Sundays were less busy days than Thursdays, so less employees would see that they both had Sundays off.

100.	On or around the end of July/beginning of August, 2015, Kahlil Reyes told Mr. Scalf that he would be conducting an investigation into Mr. Scalf's complaints of unlawful misconduct.

101.	At that time (i.e., on or around July/August, 2015), Kahlil Reyes (hereinafter, "VP Reyes") was Defendant Companies' Senior VP of Retail.

102.     On or around November, 2015, Mr. Scalf learned that several of his co-workers who, upon information and belief, had first-hand knowledge of the unlawful conduct at issue, had not been spoken with.

103.     On or around the beginning of August, 2015, VP Reyes told Mr. Scalf that VP Reyes told Defendant Frampton that it was unnecessary to require that Mr. Scalf change his work schedule so that Mr. Scalf would not have the same Thursdays off as Mr. Cespedes.

104.     The next day after VP Reyes told Mr. Scalf that he had spoken with Defendant Frampton, Defendant Frampton warned Mr. Scalf to never go over his head again.

105.     On or around the beginning of August, 2015, after VP Reyes told Mr. Scalf that he would be investigating Mr. Scalf's legally protected complaints, Defendant Frampton accused Mr. Scalf of allegedly showing favoritism to Mr. Cespedes.

106.     On at least 5 occasions between approximately July, 2015 through to September, 2015, Defendant Frampton told Mr. Scalf that he "forced" Defendant Frampton to report Defendant Flores' comments to HR.

107.     As a result, Defendant Frampton said that it was Mr. Scalf's fault that Mr. Scalf was being accused of showing favoritism to Mr. Cespedes.

108.     In reality, Mr. Scalf did not show Mr. Cespedes favoritism of any kind.

109.     Defendant Frampton also told Mr. Scalf on at least 5 occasions that Mr. Scalf should not be friends with Mr. Cespedes.

110.     Other employees were allowed to have friendships and/or were allowed to socialize at work with impunity.

111.     For example, Mr. Cespedes and Mr. Sispas had a friendship and/or socialized at work with impunity.

112.     Defendant Flores and employee Jovanny Pichardo had a friendship and/or socialized at work with impunity.

113.     Defendant Flores and employee Enriqueta Perez had a friendship and/or socialized at work with impunity.

114.     On or around the end of August, 2015, Mr. Scalf received a disciplinary written warning.

115.     The written warning claimed that Mr. Scalf had exhibited favoritism for allegedly being friends with Mr. Cespedes.

116.     The written warning also claimed that Mr. Scalf had exhibited favoritism for allegedly having lunch with Mr. Cespedes.

117.     At that time (i.e., on or around the end of August, 2015), Defendant Frampton again told Mr. Scalf that he and Mr. Cespedes should not have matching gym bags.

118.     On or around September, 2015, Mr. Scalf met with VP Reyes in Defendants' mid-town east office, located at 730 5th Avenue, 14th Floor, New York, New York 10019 (hereinafter, "Defendants' Mid-Town East, Manhattan Location").

119.     VP Stewart also appeared in the meeting via Skype.

120.     Mr. Scalf again complained about the unlawful discrimination, harassment, disparate treatment and retaliation that he was being subjected to.

121.     For example, in addition to the discriminatory name-calling, Mr. Scalf complained that Defendant Frampton told Mr. Scalf on several occasions to not be friends with Mr. Cespedes.

122.    However, other employees were allowed to have friendships with impunity, including, but not limited to, the friendship between Mr. Cespedes and Mr. Sispas, and Defendant Flores' friendships with employees Jovanny Pichardo and Enriqueta Perez.

123.    Mr. Scalf complained that he received a written discipline for allegedly eating lunch with Mr. Cespedes.

124.    However, Defendant Flores purchased lunch for employees Pichardo and Perez.

125.    Defendant Flores also ate lunch with employees Pichardo and Perez in Defendants' store room.

126.    Mr. Scalf further complained that Defendant Frampton alleged that Mr. Scalf did not work enough hours.

127.    However, Mr. Scalf typically worked a minimum of 40 hours per week as scheduled.

128.    On the other hand, Defendant Flores was absent from work on at least 5-10 occasions.

129.    Defendant Flores also arrived late for work on at least 5-10 occasions.

130.    Defendant Flores also took 2 hour lunches on at least 5-10 occasions.

131.    Employees complained to Mr. Scalf that Defendant Flores showed up to work intoxicated on at least 5-10 occasions.

132.    Employees complained to Mr. Scalf that Defendant Flores showed up to work smelling like alcohol on at least 5-10 occasions.

133.    Employees complained to Defendant Frampton that Defendant Flores showed up to work intoxicated on at least 5-10 occasions.

134.     Employees complained to Defendant Frampton that Defendant Flores showed up to work smelling like alcohol on at least 5-10 occasions.

135.     Mr. Scalf and Defendant Frampton discussed the co-workers' complaints about Defendant Flores' intoxication at work.

136.     However, the issues continued unabated and with impunity.

137.     Later that same week in September, 2015, after Mr. Scalf's legally protected complaints, Mr. Scalf received a written announcement that VP Reyes' position had been eliminated.

138.     The unlawful abuse against Mr. Scalf further escalated.

139.     From on or around August, 2015 to November, 2015, Defendant Frampton closely scrutinized Mr. Scalf's actions to make sure that Mr. Scalf and Mr. Cespedes did not cross paths in the workplace.

140.     For example, on or around October 26, 2015, Mr. Cespedes was in a car accident in the morning, so Mr. Cespedes did not arrive at work until almost noon.

141.     Mr. Scalf had an appointment that morning.

142.     Mr. Scalf notified Defendant Frampton the night before and received approval to arrive at work by 10am, rather than by his usual 8am arrival time.

143.     When Defendant Frampton arrived at work that afternoon, he told Mr. Scalf that he **knew what was really going on.**

144.     Defendant Frampton told Mr. Scalf that it was ironic that Mr. Scalf and Mr. Cespedes both arrived to work after their scheduled start times.

145.     In reality, however, Mr. Cespedes had arrived at work 2 hours after Mr. Scalf.

146.     Mr. Cespedes also had a police report regarding his car accident.

147.     In mid-October, 2015, Defendant Frampton asked why Mr. Scalf and Mr. Cespedes had arrived at work 20 minutes apart.

148.     Defendant Frampton told Mr. Scalf that he **knew what was really going on**.

149.     Defendant Frampton **told Mr. Scalf that he needed to be more careful about the impression that he was giving to the staff.**

150.     On or around mid-November, 2015, Mr. Scalf complained to Defendant Garafola.

151.     At that time (i.e., on or around November, 2015), Defendant Garafola was Defendant Companies' HR Director.

152.     Mr. Scalf met with Defendant Garafola in Defendants' Mid-Town East, Manhattan Location.

153.     Mr. Scalf complained that Defendant Frampton was still retaliating against Mr. Scalf for his legally protected complaints and for requiring that Defendant Frampton report Defendant Flores' unlawful harassment to HR.

154.     Mr. Scalf complained that Defendant Frampton was still alleging that Mr. Scalf was in a homosexual relationship with Mr. Cespedes.

155.     Director Garafola responded that Mr. Scalf should leave the job if he was not happy there.

156.     Thereafter, Defendants' unlawful abuse further escalated.

157.     Mr. Scalf was also harassed because of his age.

158.     Mr. Scalf's date of birth is February 9, 1993.

159.     On or around August, 2015, Defendant Frampton told Mr. Scalf that he **"lacked maturity,"** referring to Mr. Scalf's age.

160.     At that time, Mr. Scalf was 22 years old.

161.    Upon information and belief, Defendant Frampton was approximately 50 years old at that time.

162.    Upon information and belief, at that time, the majority of the other employees in Mr. Scalf's workplace were in their 30s or above.

163.    On or around October, 2015, Defendant Frampton again told Mr. Scalf that he **"lacked maturity."**

164.    On or around December 3, 2015, Defendant Frampton called Mr. Scalf into a meeting with Director Garafola.

165.    Director Garafola told Mr. Scalf that his employment was terminated.

166.    Defendant Frampton again told Mr. Scalf that he allegedly **"lacked maturity."**


### AS FOR THE FIRST CAUSE OF ACTION
### <u>FOR SEX/GENDER HARASSMENT AND DISCRIMINATION UNDER TITLE VII</u>
### (Against Defendants Ermenegildo Zegna, Ermenegildo Zegna Corporation and Zegna, Inc.)

167.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

168.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq*., for relief based upon the unlawful employment practices of the above-named Defendants.

169.    During all times material, Defendant Ermenegildo Zegna was and is an employer within the meaning of Title VII.

170.    During all times material, Defendant Ermenegildo Zegna Corporation was and is an employer within the meaning of Title VII.

171. During all times material, Defendant Zegna, Inc.Company was and is an employer within the meaning of Title VII.

172. At all times material, Plaintiff was an employee and an individual within the meaning of Title VII.

173. At all relevant times, Plaintiff was and is a heterosexual man and a member of protected classes within the meaning of Title VII.

174. At all relevant times, Defendants were aware of Plaintiff's sex, gender, and sexual orientation.

175. Defendants engaged in unlawful employment practices prohibited by Title VII with behaviors including, but not limited to, falsely claiming that Plaintiff was engaged in a homosexual relationship with a co-worker; calling Plaintiff derogatory names on a regular basis; giving Plaintiff disciplinary write-ups for conduct that other employees did with impunity; escalating their harassment after Plaintiff's legally protected complaints and terminating Plaintiff's employment.

176. Upon information and belief, at all relevant times, Defendants were aware of and/or condoned and/or participated in the harassment and abuse against Plaintiff.

177. Defendants' misconduct was so severe or pervasive that a reasonable person in Plaintiff's position would find that Plaintiff's work environment was intimidating, hostile or abusive.

178. Plaintiff reasonably believed that Plaintiff's work environment that was intimidating, hostile or abusive as a result of Defendants' conduct.

179. Upon information and belief, each and every Defendant contributed to the harassment, hostile work environment and retaliation, was aware of the harassment, hostile work

environment and retaliation against Plaintiff and did nothing to resolve it and/or was complicit in the misconduct.

180.    Upon information and belief, Defendants' discrimination and harassment was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff's federally protected rights.

181.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, attorneys' fees and costs, emotional pain, emotional suffering, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

182.    As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience, and lasting embarrassment and humiliation.

183.    As Defendants' conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the Jurisdictional limits of all Lower Courts.

184.    Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to Plaintiff's career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

185.    Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to lost wages, punitive damages, reasonable attorney's fees and compensatory damages from Defendant Companies under Title VII.

## AS FOR THE SECOND CAUSE OF ACTION
## FOR SEX/GENDER RETALIATION UNDER TITLE VII
### (Against Defendants Ermenegildo Zegna, Ermenegildo Zegna Corporation and Zegna, Inc.)

186. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

187. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendant.

188. Defendants discriminated against and harassed Plaintiff in violation of Title VII.

189. Plaintiff complained about Defendants' discrimination and harassment.

190. In response to Plaintiff's lawful complaints, Defendants retaliated against Plaintiff with behaviors including, but not limited to, telling Plaintiff that she had to choose between being a mother verses having a career; terminating Plaintiff's employment after Plaintiff complained of unlawful activity; requiring that Plaintiff work a part-time schedule after Plaintiff's employment was reinstated, even though Defendants were aware that Plaintiff was ready, willing and able to work a full-time schedule; closely scrutinizing Plaintiff's work performance; removing Plaintiff's office space; and terminating Plaintiff's employment for a second time after Plaintiff complained of unlawful activity.

191. Upon information and belief, each and every Defendant contributed to the harassment, hostile work environment and retaliation, was aware of the harassment, hostile work environment and retaliation against Plaintiff and did nothing to resolve it and/or was complicit in the misconduct.

192.    Upon information and belief, Defendants' discrimination and harassment was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff's federally protected rights.

193.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, attorneys' fees and costs, emotional pain, emotional suffering, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

194.    As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience, and lasting embarrassment and humiliation.

195.    As Defendants' conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the Jurisdictional limits of all Lower Courts.

196.    Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to Plaintiff's career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

197.    Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to lost wages, punitive damages, reasonable attorney's fees and compensatory damages from Defendant Company under Title VII.

**AS FOR THE THIRD CAUSE OF ACTION**
**FOR SEX/GENDER HARASSMENT AND DISCRIMINATION UNDER THE NYSHRL**

198.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

199.     This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

200.     During all times relevant to this action, Defendant Ermenegildo Zegna was and is an employer within the meaning of the NYSHRL.

201.     During all times relevant to this action, Defendant Ermenegildo Zegna Corporation was and is an employer within the meaning of the NYSHRL.

202.     During all times relevant to this action, Defendant Zegna, Inc. was and is an employer within the meaning of the NYSHRL.

203.     At all times relevant to this action, Defendant Frampton had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the NYSHRL.

204.     At all times relevant to this action, Defendant Flores had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the NYSHRL.

205.     At all times relevant to this action, Defendant Garafola had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the NYSHRL.

206. At all times relevant to this action, Plaintiff was an employee and an individual within the meaning of the NYSHRL.

207. At all times relevant to this action, Plaintiff was and is a heterosexual man and a member of protected classes within the meaning of the NYSHRL.

208. Defendants engaged in unlawful employment practices prohibited by the NYSHRL with behaviors including, but not limited to, falsely claiming that Plaintiff was engaged in a homosexual relationship with a co-worker; calling Plaintiff derogatory names on a regular basis; giving Plaintiff disciplinary write-ups for conduct that other employees did with impunity; escalating their harassment after Plaintiff's legally protected complaints and terminating Plaintiff's employment.

209. Upon information and belief, each and every Defendant contributed to the discrimination, was aware of the discrimination, did nothing to resolve the discrimination and/or was complicit in the misconduct.

210. Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

211. Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

212. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

213. Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

214. Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to lost wages and compensatory damages from Defendants under the NYSHRL.

## AS FOR THE FOURTH CAUSE OF ACTION
## FOR SEX/GENDER RETALIATION UNDER THE NYSHRL

215. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

216. This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

217. Defendants engaged in unlawful employment practices prohibited by the NYSHRL.

218. Plaintiff complained about Defendants' discrimination and harassment.

219. In response to Plaintiff's lawful complaints, Defendants retaliated against Plaintiff, including, but not limited to, falsely claiming that Plaintiff was engaged in a homosexual relationship with a co-worker; calling Plaintiff derogatory names on a regular basis; giving Plaintiff disciplinary write-ups for conduct that other employees did with impunity; escalating their harassment after Plaintiff's legally protected complaints and terminating Plaintiff's employment.

220. Defendants' conduct, as alleged herein, constitutes retaliation, as defined by the NYSHRL.

221.     Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

222.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

223.     Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

224.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to lost wages and compensatory damages from Defendants under the NYSHRL.

**AS FOR THE FIFTH CAUSE OF ACTION**
**FOR SEXUAL ORIENTATION HARASSMENT AND DISCRIMINATION UNDER THE**
**NYSHRL**

225.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

226.     This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

227.     Defendants engaged in unlawful employment practices prohibited by the NYSHRL with behaviors including, but not limited to, falsely claiming that Plaintiff was engaged in a homosexual relationship with a co-worker; calling Plaintiff derogatory names on a regular basis; giving Plaintiff disciplinary write-ups for conduct that other employees did with impunity; escalating their harassment after Plaintiff's legally protected complaints and terminating Plaintiff's employment.

228. Upon information and belief, each and every Defendant contributed to the discrimination, was aware of the discrimination, did nothing to resolve the discrimination and/or was complicit in the misconduct.

229. Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of race, color and/or ethnicity, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

230. Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

231. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

232. Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

233. Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to lost wages and compensatory damages from Defendants under the NYSHRL.

## AS FOR THE SIXTH CAUSE OF ACTION
## FOR SEXUAL ORIENTATION RETALIATION UNDER THE NYSHRL

234. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

235. This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

236. Defendants engaged in unlawful employment practices prohibited by the NYSHRL.

237. Plaintiff complained about Defendants' discrimination and harassment.

238. In response to Plaintiff's lawful complaints, Defendants retaliated against Plaintiff, including, but not limited to, falsely claiming that Plaintiff was engaged in a homosexual relationship with a co-worker; calling Plaintiff derogatory names on a regular basis; giving Plaintiff disciplinary write-ups for conduct that other employees did with impunity; escalating their harassment after Plaintiff's legally protected complaints and terminating Plaintiff's employment.

239. Defendants' conduct, as alleged herein, constitutes retaliation, as defined by the NYSHRL.

240. Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

241. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

242. Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

243.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to lost wages and compensatory damages from Defendants under the NYSHRL.

## AS FOR THE SEVENTH CAUSE OF ACTION
## FOR AGE HARASSMENT AND DISCRIMINATION UNDER THE NYSHRL

244.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

245.     This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

246.     The NYSHRL makes it unlawful to discriminate against any individuals over the age of 18:

> It shall be an unlawful discriminatory practice . . . [f]or an employer . . . to refuse to hire or employ or license or to bar or to terminate from employment an individual eighteen years of age or older, or to discriminate against such individual in promotion, compensation or in terms, conditions, or privileges of employment, because of such individual's age.  (N.Y. Exec. Law § 296 (3-a)).

247.     Defendants engaged in unlawful employment practices prohibited by the NYSHRL with behaviors including, but not limited to, falsely claiming that Plaintiff was engaged in a homosexual relationship with a co-worker; calling Plaintiff derogatory names on a regular basis; giving Plaintiff disciplinary write-ups for conduct that other employees did with impunity; escalating their harassment after Plaintiff's legally protected complaints and terminating Plaintiff's employment.

248.     Upon information and belief, each and every Defendant contributed to the discrimination, was aware of the discrimination, did nothing to resolve the discrimination and/or was complicit in the misconduct.

249. Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of race, color and/or ethnicity, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

250. Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

251. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

252. Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

253. Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to lost wages and compensatory damages from Defendants under the NYSHRL.

## AS FOR THE EIGHTH CAUSE OF ACTION
## FOR AGE RETALIATION UNDER THE NYSHRL

254. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

255. This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

256. Defendants engaged in unlawful employment practices prohibited by the NYSHRL.

257.     Plaintiff complained about Defendants' discrimination and harassment.

258.     In response to Plaintiff's lawful complaints, Defendants retaliated against Plaintiff, including, but not limited to, falsely claiming that Plaintiff was engaged in a homosexual relationship with a co-worker; calling Plaintiff derogatory names on a regular basis; giving Plaintiff disciplinary write-ups for conduct that other employees did with impunity; escalating their harassment after Plaintiff's legally protected complaints and terminating Plaintiff's employment.

259.     Defendants' conduct, as alleged herein, constitutes retaliation, as defined by the NYSHRL.

260.     Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

261.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

262.     Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

263.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to lost wages and compensatory damages from Defendants under the NYSHRL.

**AS FOR THE NINETH CAUSE OF ACTION**
**FOR SEX/GENDER HARASSMENT AND DISCRIMINATION UNDER THE NYCHRL**

264.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

265.     This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

266.      During all times relevant to this action, Defendant Ermenegildo Zegna was and is an employer within the meaning of the NYCHRL.

267.     During all times relevant to this action, Defendant Ermenegildo Zegna Corporation was and is an employer within the meaning of the NYCHRL.

268.     During all times relevant to this action, Defendant Zegna, Inc. was and is an employer within the meaning of the NYCHRL.

269.     At all times relevant to this action, Defendant Frampton had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the NYCHRL.

270.     At all times relevant to this action, Defendant Flores had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the NYCHRL.

271.     At all times relevant to this action, Defendant Garafola had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the NYCHRL.

272. At all times relevant to this action, Plaintiff was an employee and an individual within the meaning of the NYCHRL.

273. At all times relevant to this action, Plaintiff was and is a heterosexual man and a member of protected classes within the meaning of the NYCHRL.

274. Defendants engaged in unlawful employment practices prohibited by the NYCHRL with behaviors including, but not limited to, falsely claiming that Plaintiff was engaged in a homosexual relationship with a co-worker; calling Plaintiff derogatory names on a regular basis; giving Plaintiff disciplinary write-ups for conduct that other employees did with impunity; escalating their harassment after Plaintiff's legally protected complaints and terminating Plaintiff's employment.

275. Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

276. Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

277. Each and every Defendant is individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) & § 8-107(6).

278. As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost benefits; (iii) lost interest; and (iv) attorneys ' fees and costs.

279.     As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience and lasting embarrassment and humiliation.

280.     Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

**AS FOR THE TENTH CAUSE OF ACTION
FOR SEX/GENDER RETALIATION UNDER THE NYCHRL**

281.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

282.     This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

283.     Plaintiff complained about Defendants' discrimination and harassment.

284.     In response to Plaintiff's lawful complaints, Defendants retaliated against Plaintiff, including, but not limited to, falsely claiming that Plaintiff was engaged in a homosexual relationship with a co-worker; calling Plaintiff derogatory names on a regular basis; giving Plaintiff disciplinary write-ups for conduct that other employees did with impunity; escalating their harassment after Plaintiff's legally protected complaints and terminating Plaintiff's employment.

285.     Defendants' conduct, as alleged herein, constitutes retaliation, as defined by the NYCHRL.

286. Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

287. Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

288. Each and every Defendant is individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

289. As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost benefits; (iii) lost interest; and (iv) attorneys ' fees and costs.

290. As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience and lasting embarrassment and humiliation.

291. Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

**AS FOR THE ELEVENTH CAUSE OF ACTION**
**FOR SEXUAL ORIENTATION HARASSMENT AND DISCRIMINATION UNDER THE**
**NYCHRL**

292.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

293.     This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

294.     Defendants engaged in unlawful employment practices prohibited by the NYCHRL with behaviors including, but not limited to, falsely claiming that Plaintiff was engaged in a homosexual relationship with a co-worker; calling Plaintiff derogatory names on a regular basis; giving Plaintiff disciplinary write-ups for conduct that other employees did with impunity; escalating their harassment after Plaintiff's legally protected complaints and terminating Plaintiff's employment.

295.     Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

296.     Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

297.     Each and every Defendant is individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) & § 8-107(6).

298.     As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost benefits; (iii) lost interest; and (iv) attorneys ' fees and costs.

299. As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience and lasting embarrassment and humiliation.

300. Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

## AS FOR THE TWELFTH CAUSE OF ACTION
## FOR SEXUAL ORIENTATION RETALIATION UNDER THE NYCHRL

301. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

302. This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

303. Plaintiff complained about Defendants' discrimination and harassment.

304. In response to Plaintiff's lawful complaints, Defendants retaliated against Plaintiff, including, but not limited to, falsely claiming that Plaintiff was engaged in a homosexual relationship with a co-worker; calling Plaintiff derogatory names on a regular basis; giving Plaintiff disciplinary write-ups for conduct that other employees did with impunity; escalating their harassment after Plaintiff's legally protected complaints and terminating Plaintiff's employment.

305. Defendants' conduct, as alleged herein, constitutes retaliation, as defined by the NYCHRL.

306. Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

307. Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

308. Each and every Defendant is individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

309. As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost benefits; (iii) lost interest; and (iv) attorneys ' fees and costs.

310. As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience and lasting embarrassment and humiliation.

311. Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

**AS FOR THE THIRTEETH CAUSE OF ACTION
FOR AGE HARASSMENT AND DISCRIMINATION UNDER THE NYCHRL**

312. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

313. This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

314. The NYCHRL makes it unlawful to discriminate against individuals because of their age:

> It shall be an unlawful discriminatory practice . . . [f] or an employer or an employee or agent thereof, because of the actual or perceived age . . . to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment. (N.Y.C. Admin. Code § 8-107 (a)).

315. Defendants engaged in unlawful employment practices prohibited by the NYCHRL with behaviors including, but not limited to, falsely claiming that Plaintiff was engaged in a homosexual relationship with a co-worker; calling Plaintiff derogatory names on a regular basis; giving Plaintiff disciplinary write-ups for conduct that other employees did with impunity; escalating their harassment after Plaintiff's legally protected complaints and terminating Plaintiff's employment.

316. Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

317. Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

318. Each and every Defendant is individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the

NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

319.     As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost benefits; (iii) lost interest; and (iv) attorneys ' fees and costs.

320.     As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience and lasting embarrassment and humiliation.

321.     Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

## AS FOR THE FOURTEENTH CAUSE OF ACTION
## FOR AGE RETALIATION UNDER THE NYCHRL

322.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

323.     This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

324.     Plaintiff complained about Defendants' discrimination and harassment.

325.     In response to Plaintiff's lawful complaints, Defendants retaliated against Plaintiff, including, but not limited to, falsely claiming that Plaintiff was engaged in a homosexual relationship with a co-worker; calling Plaintiff derogatory names on a regular basis;

giving Plaintiff disciplinary write-ups for conduct that other employees did with impunity; escalating their harassment after Plaintiff's legally protected complaints and terminating Plaintiff's employment.

326. Defendants' conduct, as alleged herein, constitutes retaliation, as defined by the NYCHRL.

327. Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

328. Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

329. Each and every Defendant is individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

330. As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost benefits; (iii) lost interest; and (iv) attorneys ' fees and costs.

331. As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience and lasting embarrassment and humiliation.

332.     Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.   Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, the New York State Human Rights Law, and the New York City Human Rights Law; and that Defendants discriminated and retaliated against Plaintiff on the basis of gender, sex, sexual orientation, age and legally protected complaints.

B.   Declaring that the Defendants intentionally caused Plaintiff to become emotionally distressed;

C.   Awarding damages to Plaintiff, retroactive to the date of Plaintiff's employment termination, for all lost wages and benefits, past and future, back pay and front pay, and liquidated damages, resulting from Defendants' unlawful discrimination and retaliation, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

D.   Awarding Plaintiff compensatory damages for mental and emotional distress, and injury to reputation;

E.   Awarding Plaintiff punitive damages under the Title VII and the NYCHRL;

F.   Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action under Title VII and the NYCHRL;

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, NY
October 11, 2016

Respectfully submitted,

LAW OFFICE OF LAURIE E. MORRISON

By: _____
Laurie E. Morrison, Esq.
30 Broad Street, 35th Floor
New York, New York 10004
(212) 721-4051 (office)
(646) 651-4821 (fax)
morrison@lemorrisonlaw.com
*Attorney for Plaintiff*

TO:

ERMENEGILDO ZEGNA
Boutique #400
663 5th Avenue
NYC, NY 10022

ERMENEGILDO ZEGNA CORPORATION
663 5th Avenue
NYC, NY 10022
**VIA SECRETARY OF STATE:**
C/O Corporation Service Company
80 State Street
Albany, New York, 12207-2543

ZEGNA, INC.
663 5th Avenue
NYC, NY 10022
**VIA SECRETARY OF STATE:**
C/O Vasilyeva Alfiza

1701 West 3rd. Street
APT.# 4D
Brooklyn, New York, 11223

JOHN FRAMPTON
C/O Ermenegildo Zegna (Defendant's Place of Business)
Boutique #400
663 5th Avenue
NYC, NY 10022

CARLOS FLORES
C/O Ermenegildo Zegna (Defendant's Place of Business)
Boutique #400
663 5th Avenue
NYC, NY 10022

BELEN GARAFOLA
C/O Ermenegildo Zegna (Defendant's Place of Business)
Boutique #400
663 5th Avenue
NYC, NY 10022